**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| LEAH DEANNE BOUTWELL, | : | |
| Plaintiff, | : | |
| vs. | : | CA 15-00577-C |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | : | |
| Defendant. | : | |

**MEMORANDUM OPINION AND ORDER**

Social Security Claimant/Plaintiff Leah Deanne Boutwell brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security (the "Commissioner") denying her applications for a period of disability ("PoD") and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 19 ("In accordance with the provisions of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.")).

Upon consideration of the briefs of the parties, (Docs. 13 & 16), the administrative record, (Doc. 12), (hereinafter cited as "(R. [page number(s) in

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Berryhill is substituted for Carolyn W. Colvin as the proper defendant in this case.

lower-right corner of transcript])"), and after hearing from the attorneys at oral argument, it is determined that the Commissioner's decision is due to be **AFFIRMED**.

## I. Background

Boutwell completed high school in 1985 and, then, attended clerical school in 1986. (R. 255). In October 1987, Boutwell began a data entry job with a bookkeeping firm for which she performed "data entry," "ran reports," and "ran payroll" for seven hours per day, five days per week. (R. 255-56). Boutwell worked for the same bookkeeping firm until April 2009, when she was "laid off" due to a downturn in the economy. (R. 254).

On April 27, 2012, Boutwell filed a Title II application for a PoD and DIB with the Social Security Administration (the "SSA"),[2] alleging disability beginning May 14, 2009.[3] (R. 21). After her claim was denied, Boutwell requested a hearing, which was held before an Administrative Law Judge ("ALJ") for the SSA on March 12, 2014. (R. 21). On April 2, 2014, the ALJ issued an unfavorable decision on Boutwell's claim, finding her "not disabled" under sections 216(i) and 223(d) of the Social Security Act. (R. 18-35).

Boutwell requested review of the ALJ's decision by the Appeals Council for the SSA's Office of Disability Adjudication and Review. (R. 15). The Appeals Council denied Boutwell's request for review on September 10, 2015, which

[2] "The Social Security Act's general disability insurance benefits program ('DIB') provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. 423." *Sanders v. Astrue*, No 11-049-N, 2012 WL 4497733, at *3 (S.D. Ala. Sept. 28, 2012).

[3] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she [was] insured. 42 U.S.C. § 423(a)(1)(A) (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

made the ALJ's the final decision of the Commissioner. (R. 1-7). On November 13, 2015, Boutwell filed this action pursuant to § 405(g)[4] to review the final decision of the Commissioner. (Doc. 1).

## II. Standard of Review

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and internal quotations omitted). The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id.* (citations omitted). "Even if the evidence preponderates against the Commissioner's findings, [the Court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); and *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). "Yet, within this narrowly circumscribed role, [the Court does] not 'act as automatons.'" *Bloodsworth*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert. denied*, 455 U.S. 912, 102 S. Ct. 1263, 71 L. Ed. 2d 452 (1982)). The Court "must scrutinize the record as a whole, [*Ware*, 651 F.2d at 411]; *Lewis v. Weinberger*, 515 F.2d 584, 586-87 (5th Cir. 1975), to determine if the decision

[4] "Any individual, after any final decision of the Commissioner . . . made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner . . . may allow." 42 U.S.C. § 405(g).

reached is reasonable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), and supported by substantial evidence, *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981)." *Bloodsworth*, 703 F.2d at 1239.

"In contrast to the deferential review accorded to the [Commissioner's] findings of fact, the [Commissioner's] conclusions of law, including applicable review standards are not presumed valid." *Martin*, 894 F.2d at 1529 (citing *MacGregor*, 786 F.2d at 1053; *Smith v. Heckler*, 707 F.2d 1284, 1285 (11th Cir. 1983), *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982); *Smith v. Schweiker*, 646 F.2d 1075, 1076 (5th Cir. Unit A June 1981). "The [Commissioner's] failure to apply the correct legal standard or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal." *Martin*, 894 F.2d at 1529 (citing *Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir. 1986); *Bowel v. Heckler*, 748 F.2d 629, 635-36 (11th Cir. 1984); *Smith*, 707 F.2d at 1285; *Wiggins*, 679 F.2d at 1389; *Ambers v. Heckler*, 736 F.2d 1467, 1470 (11th Cir. 1984)).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips v. Barnhart*, 357 F.3d 1232, at 1237-39 (11th Cir. 2004)).

## III. <u>Claims on Judicial Review</u>

1. "The Commissioner's decision should be reversed because the ALJ erred in not giving adequate weight to the opinion of Ms. Boutwell's treating physician, Daniel K. Stubler, M.D." (Doc. 13, at 3).

## IV. **Analysis**

"At the first step, the ALJ must consider the claimant's current working situation. If the claimant is 'doing substantial gainful activity, [the ALJ] will find that [the claimant is] not disabled.'" *Phillips*, 357 F.3d at 1237 (alterations in original) (quoting 20 C.F.R. § 404.1520(a)(4)(i) & (b). "If however, the claimant is not currently 'doing gainful activity' then the ALJ moves on to the second step." *Phillips*, 357 F.3d at 1237. At the first step, the ALJ determined that Boutwell had "not engaged in substantial gainful activity since May 14, 2009, the alleged onset date." (R. 23).

> At the second step, the ALJ is to "consider the medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination, "significantly limit" the claimant's "physical or mental ability to do basic work skills." 20 C.F.R. § 404.1520(c). If the ALJ concludes that none of the claimant's impairments are medically severe, the ALJ is to conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii) & (c). If, however, the ALJ concludes that the claimant's impairments are medically severe, then the ALJ moves on to the third step.

*Phillips*, 357 F.3d at 1237 (alterations in original). At Step Two, the ALJ determined that Boutwell had the following severe impairments: "possible fibromyalgia, myalgia, menstrual migraine, hypertension, degenerative disc disease lumbar spine, and depression." (R. 23).

> At the third step, the ALJ again considers the "medical severity of [the claimant's] impairment(s)" in order to determine whether the claimant's impairment(s) "meets or equals" one of the listed disabilities. 20 C.F.R. § 404.1520(a)(4)(iii). Although the list is too voluminous to recite here, the idea is that the listings

> "streamline[ ] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987). If the ALJ concludes that the claimant's impairments meet or equal one of the listed disabilities and meet the duration requirement, the ALJ will conclude that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii) & (d). If, however, the ALJ concludes that the claimant's impairments do not meet or equal the listed impairments, then the ALJ will move on to step four.

*Phillips*, 257 F.3d at 1238 (alterations in original). At Step Three, the ALJ found that Boutwell "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in 20 C.F.R. §§ 404.1520(d), 404.1525, & 404.1256. (R. 23).

> At the fourth step, the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step . . . . 20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (alterations in original) (footnote omitted). At the

fourth step, the ALJ assessed that Boutwell had the RFC:

> [T]o perform light work as defined in [20 C.F.R. § 404.1567(b)]. Specifically [Boutwell] can lift 20 pounds occasionally and 10 pounds frequently. [Boutwell] can sit at least 6 hours during an 8 hour workday and can stand and walk in combination at least 6 hours during an 8 hour workday. [Boutwell] can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl but can never climb ladders, ropes, and scaffolds. [Boutwell] should have no exposure to unprotected heights and moving mechanical parts. [Boutwell] is limited to simple tasks with short, simple instructions.

(R. 25). Based on Boutwell's RFC assessment, the ALJ determined that Boutwell was "unable to perform any past relevant work." (R. 29).

> At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). Essentially, the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform. If the claimant can make the adjustment to other work, the ALJ will determine the claimant is not disabled. If the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled.
>
> There are two avenues by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy. The first is by applying the Medical Vocation Guidelines.
>
> Social Security regulations currently contain a special section called the Medical Vocational Guidelines. 20 C.F.R. pt. 404 subpt. P, app. 2. The Medical Vocational Guidelines ("grids") provide applicants with an alternate path to qualify for disability benefits when their impairments do not meet the requirements of the listed qualifying impairments. The grids provide for adjudicators to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."
>
> The other means by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy is by the use of a vocational expert. A vocational expert is

> an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy.

*Phillips*, 357 F.3d at 1239-40 (footnotes omitted). At step five, the ALJ determined that, given Boutwell's RFC, age, education, and work experience, "there are jobs that exist in significant numbers in the national economy that [Boutwell] can perform" based on the testimony of the vocational expert, who opined that, based on Boutwell's limitations, she could perform the jobs of silver wrapper, router, and ticket seller. (R. 29-30). Accordingly, the ALJ found that Boutwell "has not been under a disability, as defined in the Social Security Act, from May 14, 2009, through the date of [the ALJ's] decision." (R. 30).

**A. Plaintiff's Claim**

"'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairments(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairments(s), and [the claimant's] physical or mental restrictions.'" *Winschel*, 631 F.3d at 1178-79 (alterations in original) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted); *see also* 20 C.F.R. 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of

your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1240-41. "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* at 1241. "Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

> Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam). In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted).

*Winschel*, 631 F.3d at 1179 (alterations in original).

Boutwell argues that the ALJ reversibly erred in not giving adequate weight to the opinion of Boutwell's treating physician, Daniel K. Stubler, M.D. Discharging the requirement that she "state with particularity the weight given

to different medical opinions and the reasons therefor[,]" *Winschel*, 631 F.3d at 1179, the ALJ assigned weight to the opinions of Dr. Stubler, which were stated in a Clinical Assessment of Pain form dated 10/31/2012, (R. 324 [SSA Ex. 6F]), a Medical Evidence of Record form dated 10/31/2012, (R. 326-28 [SSA Ex. 7F]), and a Physical Capacity Evaluation form dated 10/31/2012, (R. 329 [SSA Ex. 8F]), and the reasons therefor as follows:

> The undersigned gives little weight to the opinions by Dr. Stubler set forth in a Clinical Assessment of Pain form dated October 2012 and in a Physical Capacities Evaluation dated October 2012. (Exhibits 6F, 8F). Dr. Stubler opined that the claimant has pain which is intractable and virtually incapacitating, that physical activity would increase her pain so that bed rest and medications are necessary and that drug side effects would be severe. (Exhibit 6F). Dr. Stubler also opined that the claimant could lift only 10 pounds and sit and stand for only 1 hour each during an 8 hour workday. (Exhibit 8F). Dr. Stubler also stated that the claimant would likely miss more than 4 days per month as a result of her impairments. (Exhibit 8F). These opinions are not supported by the medical evidence which reflects limited and conservative treatment for the claimant's complaints. The claimant's treatment was limited to medication management, and her objective findings were mild. She was able to continue a wide range of daily activities, including activities such as riding a 4-wheeler. These opinions are not supported by the record as a whole.
>
> The undersigned also gives little weight to the mental health opinion of Dr. Stubler in Exhibit 7F dated October 2012. (Exhibit 7F). Dr. Stubler opined that the claimant would have extreme limitations in restriction of daily activities, a direct contradiction to what the claimant has reported and testified to at the hearing. Additionally, Dr. Stubler found that the claimant would have extreme limitations in the ability to understand, remember, and carry out complex instructions, in the ability to complete a normal workday, and in the ability to respond to customary work pressures. The restrictions found by Dr. Stubler are not supported by the medical record which reflects only limited and conservative mental health treatment by Dr. Stubler, not a separate mental health professional. The claimant has not sought emergency treatment, nor has she sought mental health counseling. Further, the claimant participates in a wide range of daily activities. The residual functional capacity finding the claimant able to perform unskilled work fully accommodates the claimant's mental health issues.

(R. 28-29).

Thus, the ALJ determined that Dr. Stubler's opinions were not bolstered by the evidence and were inconsistent with the doctor's own medical records. Boutwell argues that "[t]he ALJ's reasons for discrediting Dr. Stubler's opinions are not based on substantial evidence." (Doc. 13, at 5). The reasons stated for the ALJ's decision to assign little weight to Dr. Stubler's opinions of Boutwell's physical impairments include the fact that she received "limited and conservative treatment for [her] complaints," (R. 28), her "treatment was limited to medication management, and her objective findings were mild," (R. 28), and she "was able to continue a wide range of daily activities, including activities such as riding a 4-wheeler," (R. 28).

In a Clinical Assessment of Pain form dated 10/31/2012, Dr. Stubler opined that the extent of Boutwell's pain is intractable and virtually incapacitating; physical activity such as walking, standing, sitting, bending, stooping, moving of extremities, etc., will increase the degree of pain experienced by Boutwell to such an extent that bed rest and/or medication is necessary; and the side effects of prescribed medication on Boutwell's ability to perform work would be expected to be severe and would limit her effectiveness due to distraction, inattention, drowsiness, etc. (R. 324 [SSA Ex. 6F]). In a Physical Capacity Evaluation form dated 10/31/2012, Dr. Stubler opined that Boutwell could be expected to carry ten pounds, occasionally, to five pounds, frequently; she could sit for one hour and stand or walk for one hour during an eight-hour work day; she did not require an assistive device to ambulate in a normal workday; she could never perform tasks that would require gross manipulation

(grasping, twisting, and handling) and working with or around hazardous machinery; she could rarely (1% to 5% of an 8-hour working day) perform tasks that would require pushing and pulling movements (arm and/or leg controls), climbing (stairs or ladders) and balancing, fine manipulation (finger dexterity), bending and/or stooping movements, reaching (including overhead), and operating motor vehicles; she could occasionally (6% to 33% of an 8-hour working day) perform tasks that would involve environmental problems (allergies, dust, etc.); and, as a result of the impairments of treatment, she would likely be absent from work more than four days per month. (R. 329 [SSA Ex. 8F]).

At a hearing before the ALJ on August 21, 2013, Boutwell testified that with medication, on an average day, on a pain scale from zero (no pain) to ten (unbearable pain), she experiences pain that she rates as a seven; and on a bad day, she experiences pain that she rates as a ten, but she does not go to the emergency room as a result. (R. 64). Boutwell testified that she has migraine headaches, for which she takes medication, seven to nine days per month that cause her to "go to bed." (R. 59). Further, Boutwell testified that a side effect of her medications is she takes a one and one-half hour nap, every day. (R. 64).

Despite Boutwell's description of the pain that she experiences, in 2011, she was capable of "riding a 4-wheeler" that resulted in her spraining her back, according to Dr. Stubler's medical records. (R. 334 [SSA Ex. 9F]). Boutwell, also, testified that she was capable of walking for twenty minutes; standing for twenty minutes; sitting for twenty minutes; lifting up to fifteen pounds; performing some personal errands such as grocery shopping, banking, driving twice a week; climbing a set of stairs; bending over to pick up a dropped item but not

repeatedly; gripping a coffee cup or opening a door knob; feeling with her fingertips but not on her right hand due to a stroke that occurred years prior; picking up small items from a table; making herself a small meal; bathing and dressing herself; performing housework such as washing dishes and clothes but not ironing, sweeping, mopping, or vacuuming; making her bed; and going to social gatherings and visiting with people. (R. 60-62). Boutwell requires breaks while performing household chores and other tasks. (R. 63).

However, Boutwell did not testify to the fact that these physical activities increased the degree of pain that she experienced to such an extent that she requires bed rest and/or medication, in contrast to Dr. Stubler's opinion in a Clinical Assessment of Pain form dated 10/31/2012, (R. 324 [SSA Ex. 6F]). The diversity of Boutwell's physical activities and capabilities to which she testified to being able to perform contrast with Dr. Stubler's opinions as to her physical capacities in the Physical Capacity Evaluation form. (R. 329 [SSA Ex. 8F]). For example, Dr. Stubler's opinion that Boutwell could never perform tasks that would require gross manipulation and working with or around hazardous machinery, (R. 329 [SSA Ex. 8F]), contrasts with Boutwell's testimony that she operates a motor vehicle twice a week. (R. 60). The severity of Boutwell's pain opined by Dr. Stubler in a Clinical Assessment of Pain form, (R. 324 [SSA Ex. 6F]), to be intractable and incapacitating is not supported by Boutwell's testimony that she can and does perform an array of physical activities, (*see* R. 60-62).

The severity of the pain that Boutwell experiences is, also, obscured by the fact that Dr. Stubler did not diagnose her with fibromyalgia. Dr. Stubler's medical records indicate that Boutwell had a diagnosis of myofascial pain

syndrome and/or early fibromyalgia on February 18, 2008, (R. 337 [SSA Ex. 10F]), and May 14, 2009, (R. 336 [SSA Ex. 10F]). Boutwell's diagnosis was changed to probable fibromyalgia beginning on September 20, 2011, (R. 334 [SSA Ex. 9F]), and remained after visits on March 19, 2012, (R. 333 [SSA Ex. 9F]), September 19, 2012, (R. 332 [SSA Ex. 9F]), and March 19, 2013, (R. 331 [SSA Ex. 9F]). Social Security Ruling, SSR 12-2p[5], issued pursuant to 20 C.F.R. §

---

[5] What specific criteria can establish that a person has an MDI [(medically determinable impairment)] of FM [(fibromyalgia)]? We will find that a person has an MDI of FM if the physician diagnosed FM and provides the evidence we describe in section II. A. or section II. B., and the physician's diagnosis is not inconsistent with the other evidence in the person's case record.

. . .

A. The 1990 ACR [(American College of Rheumatology)] Criteria for the Classification of Fibromyalgia. Based on these criteria, we may find that a person has an MDI of FM if he or she has all three of the following:

1. A history of widespread pain – that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back) – that has persisted (or that persisted) for at least 3 months. The pain may fluctuate in intensity and may not always be present.

2. At least 11 positive tender points on physical examination (see diagram below). The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist.

a. The 18 tender point sites are located on each side of the body at the: occiput (base of the skull); low cervical spine (back and side of the neck); trapezius muscle (shoulder); supraspinatus muscle (near the shoulder blade); second rib (top of the rib cage near the sternum or breast bone); lateral epicondyle (outer aspect of the elbow); gluteal (top of the buttock); greater trochanter (below the hip); and inner aspect of the knee.

b. In testing the tender-point sites, the physician should perform digital palpation with an approximate force of 9 pounds (approximately the amount of pressure needed to blanch the thumbnail of the examiner). The physician considers a tender point to be positive if the person experiences any pain when applying this amount of pressure to the site.

3. Evidence that other disorders that could cause the symptoms or signs were excluded. Other physical and mental disorders may have symptoms or signs that are the same or similar to those resulting from FM. Therefore, it is common in cases involving FM to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs. Laboratory testing may include imaging and other laboratory tests (for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor).

B. The 2010 ACR Preliminary Diagnostic Criteria. Based on these criteria, we may find that a person has an MDI of FM if he or she has all three of the following criteria:

1. A history of widespread pain (see section II. A. 1.);

2. Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and

3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded.

402.35(b)(1)[6], describes two sets of criteria to determine if a person has a medically determinable impairment of fibromyalgia. Applying the first set of criteria to Boutwell's medical records, there does not appear to be the presence of eleven positive tender points out of eighteen listed tender point sites nor are tender points discussed. *Compare* 77 F.R. 43641, *with* (R. 331-34 [SSA Ex. 9F] & 336-37 [SSA Ex. 10F]). Applying the second set of criteria to Boutwell's medical records, there does not appear to be repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, while the presence of some manifestations are arguable. *Compare* 77 F.R. 43642, *with* (R. 331-34 [SSA Ex. 9F] & 336-37 [SSA Ex. 10F]). Therefore, under SSR 12-2p, Boutwell did not have a medically determinable impairment of fibromyalgia as stated by the ALJ, (R. 26), and diagnosed by Dr. Stubler, *see* (R. 331-34 [SSA Ex. 9F] & 336-37 [SSA Ex. 10F]).

A review of Boutwell's medical records does not reveal to the Court a marked episode of debilitating pain or any need for emergency care. In fact, Dr. Stubler's treatment of Boutwell's complaints of pain was limited to medication management as described in the ALJ's summary of Boutwell's medical records.[7]

---

77 F.R. 43641-42 (footnotes omitted).

[6] 20 C.F.R. § 402.35 Publication
. . .
(b) Publication of rulings. Although not required pursuant to 5 U.S.C. 552(a)(1) and (a)(2), we publish the following rulings in the Federal Register as well as by other forms of publication:
(1) We publish Social Security Rulings in the Federal Register under the authority of the Commissioner of Social Security. They are binding on all components of the Social Security Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that we have adopted.

[7] "Medical records reflect that the claimant sought treatment from Daniel Stubler, M.D. in February 2009. (Exhibit 10F). The claimant's blood pressure was 150/116. Her strength was 5/5 throughout. Her cranial nerves II though XII were intact. Her deep tendon reflexes were 2/4 throughout. Gait and station were normal. Sensory examination revealed decreased pinprick sensation on cranial nerves II through XII. Dr. Stubler's impression was left trigeminal

(R. 26-27 & 331-37 [SSA Exs. 9F & 10F]).

The reasons stated by the ALJ for her decision to assign little weight to Dr. Stubler's opinions in regard to Boutwell's mental health issues include the fact that Boutwell received "limited and conservative mental health treatment," (R. 29), she "has not sought emergency treatment, nor has she sought mental health counseling," (R. 29), she "participates in a wide range of daily activities," (R. 29), and the RFC "finding [her] able to perform unskilled work fully accommodates [her] mental health issues," (R. 29).

In a mental health evaluation form dated 10/31/2012, Dr. Stubler classified as mild (suspected impairment of slight importance which does not affect ability to function) the degree of impairment of Boutwell's ability to ask simple questions or requests, get along with co-workers or peers, sustain a

---

neuropathy or atypical facial pain, migraine headaches, depression, and degenerative joint disease; probable sleep apnea; myofascial pain syndrome and/or early fibromyalgia and cervicalgia. (Exhibit 10F). Dr. Stubler prescribed Doxycycline, Neurontin, and Diflucan. The claimant returned to Dr. Stubler in May 2009, and her blood pressure was 138/105. (Exhibit 10F). Again, her strength was 5/5 throughout and her gait and station were normal. Her deep tendon reflexes were 2/4, and her cranial nerves II through XII were intact. Sensory examination again revealed decreased pinprick sensation of the right arm and leg. Dr. Stubler prescribed Toprol, Imitrex, and Relafen. (Exhibit 10F).

Medical records reflect that the claimant next sought medical treatment in September 2011 when she again saw Dr. Stubler. (Exhibit 9F). The September 2011 examination note references a visit on March 2011. (Exhibit 9F). Since that time, Dr. Stubler noted that the claimant had sprained her back riding a 4-wheeler. The claimant requested Xanax for her fibromyalgia-type symptomology. She reported no other complaints at the time. Dr. Stubler refilled her Vicoprofen and Ultracet and prescribed Xanax. (Exhibit 9F). Subsequently, the claimant sought treatment in March 2012, requesting to increase her Xanax because of family related stress. Dr. Stubler refilled the claimant's Ultracet, Vicoprofen, Soprol XL, Singulair, Paxil, Imitrex, and Neurontin. The claimant reported an increase in headaches, so Dr. Stubler gave her a Sumavel injection for her headaches. Her blood pressure was 149/111. Dr. Stubler increased claimant's Xanax at her request. (Exhibit 9F). The claimant returned for treatment with Dr. Stubler in September 2012. (Exhibit 9F). She reported nighttime incontinence issues, but no other complaints. Her blood pressure was 120/70. Dr. Stubler refilled the claimant's Vicoprofen, Paxil, Ultracet, and Flexeril. (Exhibit 9F). Dr. Stubler advised the claimant to follow up in 6 months. The claimant returned for treatment in March 2013, stating that she was overall doing well. (Exhibit 9F). Dr. Stubler refilled the claimant's Vicoprofen and advised her to return in 6 months. (Exhibit 9F)."

(R. 26-27).

routine without special supervision, and be aware of normal hazards and take appropriate precautions. (R. 326-28 [SSA Ex. 7F]). Dr. Stubler classified as moderate (an impairment which affects but does not preclude ability to function) the degree of impairment of Boutwell's ability to understand, remember, and carry out simple instructions; to understand, remember, carry out repetitive tasks; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; respond appropriately to supervision; and respond appropriately to changes in the work setting. (R. 326-28 [SSA Ex. 7F]). Dr. Stubler classified as marked (an impairment which seriously affects ability to function) the degree of impairment of Boutwell's ability to appropriately interact with the general public, constriction on her interests, deterioration in her personal habits, maintain attention and concentration for extended periods, and make simple work-related decisions. (R. 326-28 [SSA Ex. 7F]). Dr. Stubler classified as extreme (extreme impairment of ability to function) the degree of restriction of Boutwell's daily activities, e.g., ability to attend meetings (church, school, lodge, etc.), work around the house, socialize with friends and neighbors, etc.; understand, remember, and carry out complex instructions; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and respond to customary work pressures. (R. 326-28 [SSA Ex. 7F]). Finally, Dr. Stubler opined that the levels of Boutwell's impairments could be expected to last twelve months or longer. (R. 328 [SSA Ex. 7F]).

Despite Dr. Stubler's findings, according to Boutwell in her testimony, he did not provide mental heath counseling and limited his mental health treatment

of her to medication management. (R. 66 & & 331-37 [SSA Exs. 9F & 10F])). In contrast to Dr. Stubler's opinion that Boutwell, due to impairment, is extremely restricted in her daily activities, she testified to performing a variety of physical activities, with limitations, including visiting her family and household chores. (R. 60-62).

Dr. Stubler's opinions as to the degree of Boutwell's mental impairments do not align with the observations of Dr. Kimberly Witchard, a licensed psychologist, who performed a disability evaluation of Boutwell on June 18, 2012, specifically, a mental status exam. (R. 310-14 [SSA Ex. 2F]). Boutwell reported to Dr. Witchard that she had fibromyalgia and that her whole body hurt; her reported symptoms of depression included crying spells, low energy and fatigue due to the fibromyalgia, poor concentration, feelings of helplessness, and sleep disturbance; and her reported symptoms of anxiety included racing heart, nausea, and worry. (R. 310 [SSA Ex. 2F]). Dr. Witchard's mental status exam of Boutwell found that she presented as having good grooming and hygiene, her behavior was within normal limits, her mood was euthymic, her affect was appropriate, and she exhibited direct eye contact. (R. 312 [SSA Ex. 2F]). Dr. Witchard, also, found that Boutwell's speech was within normal limits; her thought processes were intact; she was alert and oriented to person place, date, time, and situation; as to concentration and attention, she was able to perform "serial 4's" but not "serial 7's," she calculated one of three multiplication questions, and was able to calculate two of two simple word problems; she performed memory tests; and she responded to questions designed to probe her level of abstraction, judgment, and her fund of information. (R. 313 [SSA Ex. 2F]). Dr. Witchard concluded, "[b]ased upon her use of language, reported

history, and answers to the mental status items, her level of intellectual functioning appears to be in the Average range of ability" and that "[s]he will not need assistance in managing her own funds." (R. 314 [SSA Ex. 2F]). As to Boutwell's judgment and insight, Dr. Witchard concluded "her insight and judgment were good" and diagnosed her with depressive disorder and anxiety disorder and opined that her "prognosis is good if her physical problems can be treated." (R. 314 [SSA. Ex. 2F]).

Therefore, the Court finds good cause for the ALJ's decision to not accord substantial or considerable weight to the testimony of Boutwell's treating physician, Dr. Stubler, set forth in a Clinical Assessment of Pain form dated 10/31/2012, (R. 324 [SSA Ex. 6F]), a Medical Evidence of Record form dated 10/31/2012, (R. 326-28 [SSA Ex. 7F]), and a Physical Capacity Evaluation form dated 10/31/2012, (R. 329 [SSA Ex. 8F]), and the ALJ's reasons for her decision are supported by substantial evidence. Accordingly, the Court **OVERRULES** Boutwell's assertion of error and finds that the Commissioner's final decision is due to be **AFFIRMED**.

## V. Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued September 10, 2015, denying Boutwell's application for a PoD and DIB is **AFFIRMED** under 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this Order and Rule 58, FED. R. CIV. P.

**DONE** and **ORDERED** this the 14th day of March 2017.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**